### Ex Parte Frank Freeman.

No. 6807. Decided January 25, 1922.

Rehearing Denied March 1, 1922.

**1.—Murder—Habeas Corpus—Practice on Appeal—Bail.**

Where, upon trial of a *habeas corpus*, appealed from the District Court, on a charge of murder, the same refused bail, this court after considering the facts in the case and without commenting upon the evidence affirms the judgment below.

**2.—Same—Rehearing—Capital Felony—Bail Refused.**

Where appellant insisted on his motion for rehearing the facts did not warrant a capital conviction, this court after again going over the testimony adheres to its conclusion that bail should be refused.

Appeal from the District Court of Jefferson. Tried below before the Honorable E. A. McDowell.

Appeal from a refusal of bail for a capital offense.

The opinion states the case.

*J. E. Ross, and Howth & O'Fiel,* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—Appellant, on charge of murder, was denied bail. The deceased was his father-in-law, and until about a week before the homicide resided with the appellant and his wife and two small children.

According to the testimony of appellant's wife, she asked her father to leave on account of his complaining attitude toward the appellant's conduct, particularly because of his declaration to her on frequent occasions that the appellant was running out at nights with other women. This she claimed was not true. According to her testimony and that of the appellant, he (deceased) overheard some of these conversations.

The appellant said that the deceased had been "nagging" at him and trying to induce his wife and children to leave him for about two years, and in this, the testimony of his wife and some declarations that he made to his attorney supported. According to her testimony, and his, the conversation in which the deceased referred to him as a whoremonger and to her as no better than her husband, was reported to him on the day of the homicide. From appellant's testimony on the subject, we quote:

"On the day the shooting took place, at the noon hour, I had a conversation with my wife wherein she told me of a conversation with her father and said: 'He began the same old trouble, that is, that I was a whoremonger and running out and wasn't fit to be her husband; that he asked her what she was going to do about it (meaning of course I was running out and wasn't true to her and that I was a whoremonger and that she was a damn fool and no better than my- self) and that if she didn't do something—with her out of the way he could.' I did not see the deceased at any time after she told me that until I killed him. I went over there, because I wanted him to give me a line on what he intended to do, whether he intended to keep on nagging after me or what he intended to do. I armed myself before I went over there, and my object in doing that was to have him state what he intended to do, and I wanted to have this gun along in case he attacked me; he had threatened to harm me so often before. Oh! yes, sir; he had threatened me before. When I went down there I drove my car right in front of his house and got out and walked back to him, or near him, and I said: 'Now, I want you to apoligize or explain immediately, to me whether you are going to lay off of me or what,' and he turned from where he was and started back to me—having not yet said a word—but puffed up and coming like he intended to pick me up; I didn't know what he was going to do. He was coming at me in a very unfriendly manner; at least, I thought so. At the time he turned and started at me he had never made no effort to apoligize to me. He appeared to be unfriendly. When he started at me all puffed up and red in the face I began shooting at him. I said. 'You old son-of-a-bitch.' I pulled out the gun and began pulling the trigger as fast as I could. I pulled the gun out and went to shooting. . . . When I went over to his house with that gun I asked him for an apology, and he turned and puffed up and started towards me, not a word had he said, and when he did that I said: 'You old son-of-a-bitch,' and worked the trigger as fast as I could. I did not empty the gun and reload it. I had more shells—I had a whole box full. I had not made up by mind to kill the old gentleman when I went over there, but I was going to settle things unless I could attend to my business."

Appellant testified that after the conversation with his wife mentioned, he bought a pistol and on the way to buy the pistol he passed the home of the deceased but did not see him.

Five shots were fired, one of them striking the watch which the deceased was wearing, the other striking him in the shoulder-blade, coming out near the nipple.

Eye-witnesses for the state testified that appellant approached the deceased, cursed him and called him a son-of-a-bitch and fired three shots; that the deceased asked appellant not to kill him, and that the other two shots were afterwards fired. The pistol was purchased about an hour before the homicide.

Without commenting upon the evidence, we express the opinion that it is not such as to warrant the reversal of the judgment of the judge of the district court in refusing bail.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 1, 1922.

LATTIMORE, JUDGE.—Appellant insists that the evidence is insufficient to justify our conclusion that upon a fair presentation thereof and a fair trial said facts would warrant a capital conviction. We have again gone over the testimony and find ourselves confirmed in our conclusion that bail should be refused. Deceased was a man fifty-nine or sixty years of age, a cripple, and appears to have been deliberately assaulted by appellant on the day of the killing. About twenty minutes before the shooting appellant bought a pistol for which he gave a check, and the man from whom same was purchased said he saw nothing whatever wrong with appellant at the time. The claim of demonstration on the part of deceased at the immediate scene of the killing appears scarcely to amount to anything. An eye-witness testified that when appellant approached deceased he called him a son-of-a-bitch and fired the pistol at him three times, and that deceased asked him not to shoot and then turned to run and while running appellant shot him in the back and killed him. This is a sufficient statement of the facts. Apparently appellant's only claim was that deceased, his aged father-in-law, had been trying to convince appellant's wife that he was running around after other women. We do not believe the refusal of bail by the court below should be adversely reviewed by us.

The motion for rehearing will be overruled.

*Overruled.*